UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JUDITH GOMEZ,

    Plaintiff,

v.                                                        CASE NO. 8:18-cv-1113-T-MCR

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

    Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for Supplemental Security Income ("SSI"). Following an administrative hearing held on August 23, 2017, the assigned Administrative Law Judge ("ALJ") issued a decision on November 15, 2017, finding Plaintiff not disabled since June 4, 2015, the alleged amended disability onset date. (Tr. 9-61.)

In reaching his decision, the ALJ found that Plaintiff's aortic valve disease and epilepsy seizure disorder were severe impairments; that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments; and that Plaintiff retained the residual functional capacity ("RFC") to perform light work with limitations. (Tr. 17-19.)

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 19.)

Then, after determining that Plaintiff had no past relevant work, the ALJ concluded that there were jobs, existing in significant numbers in the national economy, that Plaintiff was able to perform. (Tr. 25.) Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is **AFFIRMED**.

I. **Standard of Review**

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d

835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II. Discussion

Plaintiff raises two issues on appeal. First, she argues that the ALJ failed to make a specific finding at step two of the sequential evaluation process[2] about the severity of her chest pain, extremity numbness, dizziness, headaches, and medication side effects, and failed to account for these impairments/symptoms and any resulting limitations in the RFC assessment. Plaintiff also argues that the ALJ failed to properly apply the pain standard.

In the Eleventh Circuit, "[t]he finding of any severe impairment . . . is enough to satisfy step two because once the ALJ proceeds beyond step two, he is required to consider the claimant's entire medical condition, including impairments the ALJ determined were not severe." *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 902 (11th Cir. Mar. 30, 2011). Therefore, even if the ALJ erred by not finding Plaintiff's chest pain, extremity numbness, dizziness, headaches, and/or medication side effects to be severe impairments, the error is harmless because the ALJ found at least one severe impairment. *See Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824-25 (11th Cir. 2010) (per curiam) ("Even if the ALJ erred in not indicating whether chronic pain syndrome was a

---

[2] The Commissioner employs a five-step process in determining disability. *See* 20 C.F.R. § 416.920(a)(4).

3

severe impairment, the error was harmless because the ALJ concluded that [plaintiff] had a severe impairment: [sic] and that finding is all that step two requires. . . . Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe.").

At step two, the ALJ found that Plaintiff's aortic valve disease and epilepsy seizure disorder were severe impairments. Although Plaintiff's chest pain, extremity numbness, headaches, dizziness, or other medication side effects were not listed among the severe impairments, the ALJ did not ignore these impairments/symptoms. For example, in determining the RFC, the ALJ noted Plaintiff's testimony that she experienced chest pain without cause and headaches almost every day; numbness, tingling, and cramps in her hands and legs; and dizziness as a side effect of her medications. (Tr. 19-20.) The ALJ also noted that:

> The evidence of record does not show symptoms or limitations from the claimant's impairments that would preclude work activity within the [RFC] assessment. For example, . . . treatment notes since the claimant's application date show complaints, such as headaches, palpitations, and chest pain, and physical examination findings of murmurs at times, bilateral lower extremity dysesthesias, greater on the right, below the knees, at times, and slight diminished sensibility along the entire right side of the claimant's body on July 24, 2017. Electrodiagnostic testing showed slowing of the motor conduction velocity across the fibular head on the peroneal nerves, bilaterally, compatible with the presence of a bilateral peroneal nerve palsy at the fibular head (Exhibit 15F). However, most physical examination findings since the claimant's application date are unremarkable and do not support limitations greater than those detailed in the [RFC]. Furthermore, the medical evidence of record does not show seizure

activity that would preclude work activity within the [RFC].[3]

(Tr. 20.)[4] The ALJ then determined that the RFC assessment was "supported by the medical evidence of record, including the claimant's symptoms of chest pain

---

[3] The ALJ cited these reasons for finding Plaintiff's allegations "partially consistent with the evidence of record." (Tr. 20.) The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id.*) As the ALJ provided explicit and adequate reasons, supported by substantial evidence, for his credibility determination, any argument to the contrary is rejected. Of note, Plaintiff seems to argue that the ALJ erred by not specifically discrediting "Plaintiff's pain testimony concerning her need to sit when experiencing chest pain, her need to lay down when having a headaches [sic], her inability to stand all day due to the dysesthesias in her lower extremities, her lack of strength in her hands, or the dizziness she experiences as a result of her anti-convulsant medication." (Doc. 26 at 16.) Although the ALJ could have discredited each of Plaintiff's complaints (and any resulting limitations) individually, he was not required to do so, particularly since his decision shows that he properly applied the pain standard and provided explicit and adequate reasons for his credibility determination. *See Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (explaining that a court "will not disturb a clearly articulated . . . finding [about subjective complaints that is] supported by substantial evidence").

[4] There are numerous other references throughout the ALJ's decision to Plaintiff's chest pain, extremity numbness, headaches, dizziness, or other medication side effects. (*See, e.g.*, Tr. 20 ("Treatment notes of Jose P. Pizarro-Otero, M.D. of Neurophysiology Center, dated June 24, 2015, show that the claimant complained of throbbing, bi-frontal headache without nausea . . . . The claimant reported about 20 headaches in the month prior to this visit. The claimant also reported bilateral lower extremity tingling, numbness, and dysesthesias, more in her right leg, since her surgery."); Tr. 21 & 23 (noting complaints of occasional dizziness and chest pain with activity, headaches, cramps in the arms and legs, and side effects from medications, but stating, *inter alia*, that Plaintiff's "chest pain was felt to be musculoskeletal and improved without intervention"); Tr. 22 ("The claimant reported having eight headaches per month, but did not take Topiramate because it made her drowsy. The claimant's headaches reportedly resolved with Dipyrone from Cuba."); Tr. 23 ("[T]he claimant complained of three episodes per week of numbness and tingling in her face, arm, and leg, associated with trembling of the right side, lasting five to seven minutes with complete resolution. The claimant reported periodic headaches once per week or so, described as generalized, consisting of intense pressure for several hours, and resulting in difficulty focusing and feeling as if her memory was slightly affected.").)

5

consistent with [the] objective medical evidence of record, including physical examination findings . . . , lack of evidence of seizures after April of 2015, and treatment notes of Dr. Pizarro-Otero showing bilateral lower extremity dysesthesias, greater on the right, below the knees, but otherwise unremarkable examination findings, including 5/5 strength, a normal gait, no ataxia, no unsteadiness, no use of an assistive device, normal reflexes, and intact fine motor movement." (Tr. 25.)

As shown by the ALJ's decision, he adequately considered all of Plaintiff's impairments, both severe and non-severe, in combination. *See Tuggerson-Brown v. Comm'r of Soc. Sec.*, No. 13-14168, 572 F. App'x 949, 951-52 (11th Cir. July 24, 2014) (per curiam) ("[T]he ALJ stated that he evaluated whether [plaintiff] had an 'impairment or combination of impairments' that met a listing and that he considered 'all symptoms' in determining her RFC. Under our precedent, those statements are enough to demonstrate that the ALJ considered all necessary evidence.").

Moreover, the ALJ's findings are supported by substantial evidence. (*See, e.g.*, Tr. 380-81 (noting "[n]o acute cardiac or pulmonary process" according to a chest X-ray from March 19, 2015, despite complaints of intermittent palpitations and fatigue[5]); Tr. 447 (noting "[n]o hemodynamically significant carotid stenosis"

---

[5] However, a CT scan of the chest from March 19, 2015 showed significant aneurism of the ascending aorta measuring up to 6.8 cm in diameter and multiple left
(continued...)

6

on March 21, 2015); Tr. 615 (noting chest tightness that resolved on its own as of March 22, 2015); Tr. 523 (noting no acute cardiopulmonary process according to a chest X-ray from March 24, 2015); Tr. 411 (noting that a March 25, 2015 EEG did not support a diagnosis of seizures[6]); Tr. 446 (noting a negative head CT scan from March 25, 2015); Tr. 494 (noting no acute intracranial abnormality according to CT scans of the head from March 25 and March 27, 2015); Tr. 493 (noting, on March 31, 2015, that Plaintiff's encephalopathy had resolved and no seizure activity was shown on the EEG); Tr. 667 & 807 (noting no acute intracranial abnormality according to a CT scan and an MRI of the head from April 16, 2015[7]); Tr. 842-45 (noting a murmur and chronic joint pain, but otherwise unremarkable examination on April 21, 2015); Tr. 369-70 (noting a normal examination, except "light touch BLE dysesthesias R>L below the knees," on May

---

[5](...continued)
renal calculi with the largest measuring 5 mm. (Tr. 447-48.)

[6] However, ECG tests, performed on March 19, March 21, March 25, March 26, and March 27, 2015, were abnormal. (Tr. 433-35.) On March 26, 2015, Plaintiff had a second opinion consultation regarding encephalopathy. (Tr. 391.) The impression was:
    1. Persistent postoperative encephalopathy with subtle focality on exam
    with slightly decreased left upper extremity movement of uncertain
    etiology, questionable small cerebral embolic shower.
    2. Episode of left body twitching in the immediate postoperative period,
    questionable seizures.
    3. Recent diagnosis of a large ascending aortic aneurism and severe
    aortic insufficiency, status post repair (03/24/2015).
(Tr. 393.)

[7] A brain MRI from April 16, 2015 was abnormal. (Tr. 705-06.) An EEG study from April 17, 2015 was also abnormal. (Tr. 702.)

7

6, 2015, despite complaints of headache and paresthesia); Tr. 644-46 (noting dizziness, intermittent chest pain, and fatigue, but otherwise stable examination on May 8, 2015); Tr. 838-41 (noting right-sided chest tenderness and murmur but otherwise unremarkable examination on June 1, 2015); Tr. 641-43 (noting occasional chest pain and right-sided chest discomfort, stable palpitations, headache, and dizziness as of June 3, 2015); Tr. 663 (noting no acute cardiopulmonary process as of June 8, 2015); Tr. 1261 (noting that a brain MRI from June 22, 2015 showed no evidence of acute infarct or intracranial mass); Tr. 751-53 (noting complaints of headache and paresthesia, but mostly unremarkable examination as of June 24, 2015); Tr. 638-40 (noting unremarkable examination despite dizziness and occasional palpitations as of July 1, 2015); Tr. 834-37 (noting lightheadedness and a murmur, but otherwise unremarkable examination on July 27, 2015); Tr. 763-65 (noting a normal examination on August 19, 2015, despite intermittent right-sided chest pains); Tr. 993-94 (noting a normal electromyographic study of both lower extremities, but an abnormal nerve conduction study, on September 25, 2015); Tr. 1076-80 (noting intermittent chest pain and palpitations, but mostly unremarkable examination on October 14, 2015); Tr. 966 & 974-77 (noting that Plaintiff was admitted on December 2, 2015 for generalized chest pain after lifting boxes, but the pain was musculoskeletal and improved without intervention; a CT scan of the head and neck showed no evidence of filling defect, vascular malformation, or aneurysm, and no acute

8

intracranial findings; an X-ray showed no acute pulmonary disease; a CT scan of the chest showed aortic dissection protocol negative for acute findings; an MRI of the brain showed, *inter alia*, no evidence of acute ischemia); Tr. 1081-85 (noting a normal examination on February 17, 2016); Tr. 989 (noting, on February 26, 2016 that: "[Plaintiff] stopped the Amitriptyline since she states she is not needing it. She has been seizure free. She continues with headache 8 days per month and she did not take the Topiramate since it [caused] drowsiness. . . . The headaches resolve[d] with [D]ipyrone from Cuba."); Tr. 1054-59 (noting a murmur, but otherwise unremarkable examination on April 7, 2016); Tr. 1050-53 (noting no symptoms and a normal examination on June 2, 2016); Tr. 1086-91 (noting precordial non-cardiac pain and palpitations, but a normal ECG on June 7, 2016); Tr. 1193-96 (noting no active complaints and a normal examination on November 1, 2016); Tr. 1185-88 (noting complaints of cramps on both arms and legs and occasional chest pain, but otherwise unremarkable examination on March 3, 2017); Tr. 1180-83 (noting occasional dizziness and a murmur, but otherwise unremarkable examination on March 31, 2017); Tr. 1176-79 (noting complaints of fatigue and headache, but mostly normal examination on May 16, 2017); Tr. 1243-44 (noting slight diminished sensibility along the right side of Plaintiff's body, but otherwise normal examination on July 24, 2017); Tr. 80 (noting "[n]o hemodynamically significant stenosis in the carotid or vertebral arteries" as of August 15, 2017); Tr. 79 (noting that the brain MRI of October 30,

2017 appeared stable compared to the scan from 2015); Tr. 64 (noting a November 9, 2017 unremarkable examination despite reports of weakness and dizziness); Tr. 71 (noting, on December 20, 2017, that Plaintiff's intermittent chest pain was musculoskeletal and should be referred to pain management).)

As reflected in the ALJ's decision, he considered Plaintiff's impairments and incorporated into the RFC assessment only those limitations resulting from the impairments, which he found to be supported by the record. Therefore, Plaintiff's argument that the RFC assessment and the hypothetical question to the vocational expert are incomplete lacks merit.

### III.     Conclusion

The Court does not make independent factual determinations, re-weigh the evidence, or substitute its decision for that of the ALJ. Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. Based on this standard of review, the Court concludes that the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act for the time period in question is due to be affirmed.

Accordingly, it is **ORDERED**:

1.     The Commissioner's decision is **AFFIRMED**.

2.     The Clerk of Court is directed to enter judgment consistent with this

Order, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, on August 19, 2019.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record